[No. 3864.   Decided March 20, 1902.]

J. D. SHERRICK *et ux., Appellants,* v. W. D. COTTER *et al., Respondents.*

VENDOR AND PURCHASER — WHAT ARE APPURTENANCES — HOP PRESS.

Under an agreement to convey a certain tract of land "together with the appurtenances," the purchaser cannot recover damages from the vendor for failure to deliver a hop press as appurtenant to the premises, although used in connection therewith, where it was not attached to the building, but was placed in a room just high enough to receive it, through an opening in the upper floor which had been subsequently floored over, and which could again be ripped open to permit the removal of the hop press without causing material injury to the building.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge.   Reversed.

*H. G. Rowland,* for appellants.

*A. R. Titlow,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—On October 2, 1899, the appellants entered into an agreement with the respondents by the terms of which they agreed to convey to the respondents, by a good and sufficient warranty deed, a certain tract of land, specifically described, containing about one acre, "together with the appurtenances." The consideration agreed upon was $700, of which $25 was paid on the execution of the agreement, and the balance was agreed to be paid on the 1st day of January, 1900. The contract contained an express promise on the part of the respondents to purchase the land described, and to make the deferred payment, with interest, at the time agreed upon. At the time the agreement was entered into there was upon the land a hop house or kiln, constructed and used for the purpose of housing and curing hops, in which was a hop press and certain stoves and stove pipes; the former used for baling hops, and the latter for drying the same. The premises at the time of the sale were in the possession of one Stewart, who was holding under an agreement with the appellants by the terms of which he was to quit and surrender possession of the premises when the same should be sold by them. On the morning of the 3d of October, 1899, the respondents sent their agent to take possession of the property. The agent entered the building and started fires in the stoves. Shortly thereafter Stewart came to the building, and, while conceding the right of the respondents to enter and take possession of the real property, claimed the stoves and stove pipes and the hop press as his own property, and shortly thereafter, over the protest of the respondents, removed the hop press from the building, leaving the respondents in the possession of the remainder of the property. The ap-

pellants acquired title to the property from the executor of the estates of James P. and Margaret A. Stewart, in the deed for which the general heirs of the estates joined. This deed was in the usual form.    It described the land by metes and bounds, and conveyed the same to the appellants, with the tenements, hereditaments, and appurtenances thereunto belonging, making no reference to personal property.    Stewart claimed the hop press as personal property, contending that it did not, for that reason, pass to the appellants by the deed last mentioned.    After the time for making the deferred payment had expired, the appellants tendered to the respondents a warranty deed for the premises, and demanded of them the payment of the deferred part of purchase price.    This deed the respondents refused to accept, whereupon another was tendered, describing the land in a slightly different manner, which was likewise refused; the respondents refusing at the same time to pay the balance of the purchase price. Thereupon the appellants brought this action to enforce a specific performance of the contract.    The respondents, answering the complaint, admitted the execution of the contract, and sought to counterclaim by way of damages because of the failure of the appellants to deliver to them the hop press.    After a trial the lower court made findings to the effect that the hop press was an appurtenant to the land described in the agreement sued upon, and that the respondents were damaged in the sum of $300 because of the failure of the appellants to deliver the same to them, and entered a judgment and decree requiring the respondents to accept the deeds tendered as a good and sufficient conveyance of the premises; awarding to the appellants the purchase price and interest, after deducting therefrom the amount found as damages.

The agreement sued upon was an agreement to convey a certain described tract of land, with the appurtenances thereunto belonging. Whatever would pass under a deed containing a like description and a like term was agreed thereby to be conveyed, but nothing more. . A hop press placed in a building situate upon land is not appurtenant to the land, under any of the accepted definitions of that term.

"Appurtenances," says Rothrock, J., in *Ottumwa Woolen Mill Co. v. Hawley,* 44 Iowa, 57 (24 Am. Rep. 719), "are things belonging to another thing as principal and which pass as incident to the principal thing. The term as used in conveyances passes nothing but the land and such things as belong thereto, and are part of the realty."

And Mr. Justice Story, after saying that certain things may pass by grant, as appurtenances, if such be the clear intent of the parties as gathered from the terms of the instrument of conveyance, says:

"In a case, therefore, where the words of a grant pass land 'with its appurtenances,' the law will, in the absence of any controlling words, deem the word 'appurtenances' to be used in its technical sense; and that construction will not be displaced until it is made manifest from other parts of the grant that some other thing was actually intended by the parties. I say, until it is made manifest; by which I mean, clearly and definitely ascertained that the word is used in another sense. I add, also, from other parts of the same grant; for it is not open to parol evidence to explain or vary the legal sense. If there is nothing *in rerum natura,* upon which the word can operate, that does not entitle the court to desert the legal sense. It has been said by the counsel for the defendant, that there were buildings on No. 2, to which the word 'appurtenances' is commonly applied. But such buildings are in no just sense 'appurtenances;' but, if annexed

to the freehold, they are a parcel of the land, and pass as such by the deed. It is not, however, necessary to show that there are things granted, to which the word applies. It is often thrown in by conveyancers without any actual knowledge of the premises, to avail, as far as it may avail, by way of cautionary enlargement of the principal grant, if there be anything, on which it may operate. If there be in fact no appurtenances, then the word, like other expletives in a deed, is merely nugatory." *United States v. Harris,* 1 Summ. 21 (Fed. Cas. No. 15,315).

In the agreement before us there is nothing which indicates that the word "appurtenant" was used other than in its technical sense. Whether, therefore, the hop press was part of the property agreed to be conveyed cannot be gathered from any consideration of the clause of the agreement mentioning appurtenances, but must be gathered from another and entirely different consideration, viz., was it so attached to the realty as to make it a part thereof? In other words, was it what in law is denominated a "fixture?" On this question the trial court made no finding, nor does it appear that the evidence was specially directed thereto. Enough does appear, however, to show that hop presses of this character are constructed without reference to use in any particular building, but are articles of merchandise, bought and sold in the markets, and having of themselves a market value, and that this press did not differ in kind from the ordinary hop press. Articles of this character have generally been held in this state to be personal property, which do not pass by a grant of the fee of real property, though situate in a building erected thereon at the time of the grant, if they can be removed without material injury to the fee. See *Neufelder v. Third St. & Suburban Railway,* 23 Wash. 470 (63 Pac. 197, 53 L. R. A. 600),

where the cases will be found collected. As to the manner in which this particular press was attached to the building, the only witness who testifies on the subject says that the baling room was just high enough to receive the press, so that it came even with the top of the upper floor; that an opening was left to receive the press, which was floored over, apparently after the press was put into the building; and that the persons removing the press (to use the language of the witness) "ripped that up, and hitched the team to it [the press] and drawed it away." It was not shown that this ripping up of the floor covering the opening caused any material injury to the building, and, under the rule of the cases above cited, we do not think the press was so attached to the building as to make it any part of the realty. This being so, it was not included within the agreement to convey, and the respondents could not, therefore, recover damages for the appellants' failure to deliver possession of it to them.

We have not overlooked the evidence on the part of the respondents to the effect that they were extensively engaged in the business of hop raising, and that they purchased this property for the purpose of curing and otherwise preparing for market their product, and that a hop press is a necessary part of the machinery required for that purpose. But this cannot avail the respondents. There is no pretense that there was any fraud or mistake in the execution of the agreement to convey, or that it is either uncertain or ambiguous in its terms; nor was it shown that there was any separate collateral agreement, independent of the writing, by which the appellants agreed to sell them the press. What the appellants agreed to convey must therefore be gathered from the writing

itself. Its legal sense cannot be explained or varied by parol evidence.

The judgment appealed from is reversed in so far as it allows damages to the respondents, and the cause is remanded, with instructions to modify the judgment by disallowing such damages, and allowing the appellants to recover for the full amount of the deferred part of the purchase price, with interest, according to the terms of the agreement.

REAVIS, C. J., and HADLEY, DUNBAR, ANDERS, and MOUNT, JJ., concur.