**NELSE MORTENSEN & CO., Inc.,**
**Appellant,**

v.

**Kenneth S. TREADWELL, Trustee of Puget Sound Products Co., a Corporation, Debtor, and Seattle Association of Credit Men, Appellees.**

No. 13862.

United States Court of Appeals
Ninth Circuit.

Sept. 20, 1954.

Rehearing Denied Jan. 5, 1955.

Lycette, Diamond & Sylvester, Herman Howe, Seattle, Wash., for appellant.

Little, LeSourd, Palmer, Scott & Slemmons, Warren R. Slemmons, Brockman Adams, Miracle, Treadwell & Pruzan, Albert M. Franco, Jones, Birdseye & Grey, Seattle, Wash., for appellees.

Before BONE and FEE, Circuit Judges, and DRIVER, District Judge.

JAMES ALGER FEE, Circuit Judge.

In 1947, the United States sold certain land, building and equipment to Puget Sound Products Co., which at the time of the determination here in question was undergoing reorganization according to the provisions of Chapter X under the jurisdiction of the Bankruptcy Court. A quit-claim deed was given Puget Sound, conveying the real property and improvements thereon and, in addition, several. described articles of equipment. Puget Sound gave back to the United States a note and purchase money mortgage on the real property and improvements, and, separately, a note and chattel mortgage on the described articles of equipment. In 1949, an additional chattel mortgage was placed on the equipment in favor of a third party. The chattel mortgage held by the United States was then satisfied by payment. Also in 1949, Puget Sound gave to the Seattle Association of Credit Men a mortgage on the real property and a third chattel mortgage on the equipment. The United States foreclosed its mortgage on the real property, joining the Seattle Association of Credit Men in virtue of its subsequent mortgage on the realty. Decree of foreclosure was entered. The real property was sold to the United States and the sale was confirmed. Nelse Mortensen & Co., Inc. acquired the right of redemption from the Seattle Association of Credit Men and, in 1951, proceeded to exercise it by paying the amount bid in by the United States with interest and costs. Deed of the Marshal to Mortensen as grantee for the described real property thereupon issued. When Mortensen took possession of the property the equipment which

was the subject of the chattel mortgages mentioned above remained in the building, which was admittedly a fixture. Mortensen now claims title to this equipment by virtue of his redemption of the real property and also claims rent from bankrupt for the period during which the equipment was stored on the premises.

The referee expressly found that these articles of equipment were personal property and had been treated by everyone as chattels and belonged to Puget Sound. On another petition, the referee found Mortensen made an oral agreement to allow Puget Sound to store these articles in return for the use of such portions of the equipment as Mortensen might find convenient.

 In the State of Washington the intention of the owner of real property to treat as personal property at the time of placement on the realty certain articles which might otherwise be regarded as fixtures or improvements thereto, is given effect.[1] It is true the courts say that this intent must be gathered from the "circumstances surrounding the transaction," instead of "by testimony as to the actual state of the mind of the person who attached the machinery to the real estate at the time it was attached."[2] It must be assumed that the testimony, at a later time, of the person making the attachment is not incompetent, but if the intent be kept "secret" by him it should not avail where the interests of third parties who have relied upon an apparent permanent affixation of the article to the freehold have intervened.[3] In all the decisions

of the state courts in this field notice or knowledge of the primary intention is cardinal.[4] The right to rely upon the attachment itself is applied in varying situations, such as mortgagor and mortgagee, landlord and tenant, vendor and purchaser, and in mechanics lien law. Where there are no other criteria, the intention which a normal owner of realty would have in bringing chattels upon the property will be given weight. Pertinent instances are the "improvements" made by the operator of a mine which may consist of articles which might be classified otherwise as movable personal property,[5] and the congregation of chattels on a parcel in connection with buildings, which may be normally aggregated as a "plant" and thereby tied to the ground because of the operation thereof as a unit.[6]

These holdings do not militate against the theorem that what is dealt with is "intention of the owner" at the time of attachment, except in the case of buildings, permanent structures and similar attachments which under older law could not be severed by any process except actual removal.[7]

 As a corollary of this theorem, a declaration of the owner of attachment or severance made at the time of the act should be upheld, especially if the contesting party had knowledge or notice. For it is accepted law that not only may the owner attach personalty to real property, he may afterward sever true chattels.[8]

 The referee found it was the intention of the government to segregate this equipment and treat it as personalty.

1. Westinghouse Electric Supply Co. v. Hawthorne, 21 Wash.2d 74, 150 P.2d 55; Filley v. Christopher, 39 Wash. 22, 80 P. 834.

2. Washington National Bank of Seattle v. Smith, 15 Wash. 160, 45 P. 736, 739.

3. Strain v. Green, 1946, 25 Wash.2d 692, 172 P.2d 216.

4. Robinson Codfish Co. v. Porter Fish Co., 75 Wash. 181, 134 P. 811; Boeringa v. Perry, 96 Wash. 57, 164 P. 773.

5. Reeder v. Smith, 118 Wash. 505, 203 P. 951.

6. Nearhoff v. Rucker, 156 Wash. 621, 287 P. 658.

7. Cutler v. Keller, 88 Wash. 334, 153 P. 15, L.R.A.1917C, 1116.

8. Robinson Codfish Co. v. Porter Fish Co., 75 Wash. 181, 134 P. 811.

The record not only contains substantial evidence to support this finding, but almost conclusive indicia of correctness. The instrument of quitclaim given by the United States to Puget Sound in consummating the sale divided the property into the parcel of realty with the improvements, by which the buildings and other structures passed as appurtenances, and further expressly conveyed the "equipment" as personalty.[9] The taking back of the real mortgage and the chattel mortgage on these separate properties respectively, precluded the United States from thereafter claiming as to Puget Sound that the described personalty was an integral part of the realty.[10]

■ The law is that if personal property securely attached to the realty is made subject to a chattel mortgage which is thereafter paid off, the ordinary rule controls and in the absence of other circumstances the article is treated as a part thereof. But where chattels are attached to realty and express declaration of the continuing character of the articles as personalty is announced at the time, these do not amalgamate with the soil and a prior mortgagee of the realty who has no notice or knowledge of the transaction will gain no rights in these articles.[11] Immediately before and immediately after the payment of the chattel mortgage to the government, Puget Sound gave two chattel mortgages to other persons on these very same chattels. Immediately after both were placed of record.

■ Since an owner of real property can indicate an intention to deal with articles upon real property as chattels, these chattel mortgages were valid. The United States would have been in a very inequitable position to contest the validity of these chattel mortgages by claiming that notwithstanding the personalty had been severed by express stipulation of an authorized agency the articles became part of the realty subject to the real property mortgage of the government thereon. The rights of the subsequent chattel mortgagees would have been destroyed although it would have been very apparent that the money which they advanced on this security had been applied in part at least to payment of the prior chattel mortgage of the United States.

■ The decree of foreclosure, order of sale and confirmation by the United States, standing alone, shows that only the realty, including the "buildings, structures, and improvements located thereon," was acquired thereby. Mortensen, if a successor to the United States, acquired only the rights of the United States. But since Mortensen bought the right of redemption of the Seattle Association of Credit Men it is claimed Mortensen got further rights. This is untrue. The Seattle Association of Credit Men were foreclosed of rights in the real property. Neither of the holders of the existing chattel mortgages were joined as such. Therefore, Mortensen got the rights which the government had as to the realty and nothing more. As has been previously seen, the United States could not claim that this personal property had been transmuted into real property by payment of its chattel mortgage.

Mortensen was on constructive notice by the record of the three chattel mortgages, first to the government and subsequently to third parties, that this equipment was treated as personalty. Actual knowledge was shown to have been brought home to Mortensen by conversations with its officers and agents. Specifically, the referee found that Mor-

9. Boeringa v. Perry, 96 Wash. 57, 164 P. 773; Washington National Bank of Seattle v. Smith, 15 Wash. 160, 45 P. 736.

10. Hill's Garage v. Rice, 134 Wash. 101, 234 P. 1023. See, Mattachek v. Pugh, 153 Or. 1, 55 P.2d 730, 168 A.L.R. 725.

11. King v. Blickfeldt, 111 Wash. 508, 191 P. 748; German Savings & Loan Soc. v. Weber, 16 Wash. 95, 47 P. 224, 38 L.R.A. 267.

tensen entered into an oral agreement with Puget Sound after the former had acquired the ground and buildings that this personal property could be stored on the premises free, in return for the right of Mortensen to use such personal property for its convenience.

This agreement also disposes of the claim of Mortensen for rent.

 The referee found squarely upon the facts. The District Court was bound by his findings, by law. This Court is also bound. No error was committed as a matter of law.

Affirmed.